UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LIONEL GIBSON, | ) |
|                 Petitioner, | ) |
|                 v. | ) No. 1:20-cv-02291-JMS-TAB |
| MARK SEVIER, | ) |
|                 Respondent. | ) |

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS**

Lionel Gibson is an Indiana prisoner. His habeas petition challenges a prison disciplinary conviction under prison case no. MCF 19-11-0866. For the reasons explained below, Mr. Gibson's petition is **DENIED**.

### I. LEGAL STANDARD

Prisoners in Indiana custody may not be deprived of good-time credits or credit-earning class without due process. *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal*, 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

## II. BACKGROUND

### A. Underlying Misconduct

Mr. Gibson was found guilty of possessing a cell phone in violation of prison code A 121. On November 20, 2019, Caseworker J. Koons entered Mr. Gibson's cell at Miami Correctional Facility to search his property. She asked Mr. Gibson to identify his property box and shelf and exit the cell. Rather than exiting the cell, Mr. Gibson began moving items around "just to make things easier for [Koons]." Koons told Mr. Gibson that was not necessary. Mr. Gibson then reached over to the bottom bunk and started to grab something. He tucked both of his hands into his back waistband and claimed that he was "just grabbing [his] headphones." Dkt. 6-1 (report of conduct)."

Koons ordered Mr. Gibson to face the wall and put his hands on his head so she could conduct a pat down. Mr. Gibson turned, put both hands in front of himself, and walked out of the cell. Koons ordered Mr. Gibson to stop three times, but he refused. When Koons walked toward him, Mr. Gibson darted into a nearby cell and began flushing something down the toilet. *Id.*

Mr. Gibson left the nearby cell and continued to refuse Koons' commands to stop. He sat on the top range, with his legs hanging over the edge, and began sliding off. Koons grabbed him by the biceps to keep him from sliding off. Koons secured Mr. Gibson's hands behind his back and waited for first responders to arrive. Mr. Gibson told Koons that he would kill her and own her. Eventually, first responders arrived and placed Mr. Gibson in mechanical restraints. *Id.*

Koons then went to the nearby cell to search the toilet and saw a red wire sticking out. She pulled wire and found a black Unihertz cell phone attached to it. Koons then searched Mr. Gibson's cell and found a homemade extension cord, an altered tablet charger with wiring missing, and several altered wires. Based on these observations, Koons concluded that Mr. Gibson had been in possession of the cell phone and tried to flush it down the toilet to avoid being caught. *Id.*

### B. Disciplinary Proceedings Prior to Hearing

On November 25, 2019, Mr. Gibson received written notice of the charge when he was given a copy of the screening report. He asked to call prisoner Brian George, Case manager Holland, Sgt. B. Michael, and Sgt. Rumpe as witnesses. He asked for surveillance video in order to prove that he "followed all commands." He asked for the facility's policy about females conducting strip searches and cell searches. He asked to know "How many of these exact phones have been found in the last year," "How many DHB officers have been removed in the last 90 days due to improprieties," and "How many people are in RHU pending cell phones." Dkt. 6-3 (screening report).

Many of Mr. Gibson's evidentiary requests were denied. His requests for the number of removed DHB officers and the number of inmates with pending cell phone charges were denied as irrelevant. His request for the number of identical cell phones that were found was denied because that record did not exist. His request for the search policy was denied because a copy of the policy could be requested from the law library. *Id.* at 2.

Mr. Gibson's request for surveillance video was also denied. Officer T. Englehardt provided a report that stated, "The request made by the offender to view the DVR in person is denied. Allowing the offender to view the surveillance would pose a security risk because it would allow the offender to know the camera's capabilities and possibly avoid detection in the future." Officer Englehart also stated that "The DVR data was not viewable. The system states the search did not return any metadata results from this date and time. The video is unavailable for viewing." Dkt. 6-6 (video review form).

As explained in Part D of this Section, prison officials later recovered the requested surveillance video. The surveillance video was in their possession but was not presented at the disciplinary hearing. *See* dkt. 6-5; dkt. 11.

Prison officials sought written witness statements from the individuals on Mr. Gibson's witness list. Prisoner Brian George refused to give a statement. Case manager Holland was asked if Koons had refused to process Mr. Gibson's grievances. Holland answered, "I do not know if Ms. Koons did or did not process any grievances. She is very thorough in her job duties." Sgt. Michael wrote, "On the date in question and time I was not at [Miami Correctional Facility]. I was not advised of anything to do with this incident." Sgt. Rumpe was asked about whether Koons was keeping his property from him. Sgt. Rumpe answered, "I don't know anything about his property being kept from him. I do know that we didn't get his property until Sunday 11-24-19 in RHU." Dkt. 6-7 (witness statements).

**C. Disciplinary Hearing**

On February 5, 2020, this matter proceeded to a disciplinary hearing. By this date, Mr. Gibson had been transferred from Miami Correctional Facility, where the misconduct occurred, to New Castle Correctional Facility. Dkt. 6-5, p. 1 (report of disciplinary hearing).

Mr. Gibson provided a four-page written statement in his defense. In the statement, he argues that the denials of his evidentiary request put him at a disadvantage. He argued that Koons violated prison policy by conducting a search of his cell and a neighboring cell by herself. He stated that he had been in the housing unit because he had recently been stabbed in the foot due to the misconduct of prison officials. He argued that Koons was biased against him and mischaracterized his conduct in her report. He argued that the confiscated cell phone was commonly used by other prisoners and implied that the cell phone was not his. And he concluded

by accusing Koons of fabricating the charge to get him removed from the housing unit because she was worried that Mr. Gibson would talk to internal affairs. *Id.* at 2-5.

The disciplinary hearing officer considered Mr. Gibson's written statement, staff reports, and witness statements and found Mr. Gibson guilty. The disciplinary hearing officer noted that "Sgt. Nice is present but holds no weight in decision." Mr. Gibson received a loss of 180 days earned credit time and a demotion in credit-earning class. *Id.* at 1.

### D. Recovered Video

Prison officials later recovered two surveillance videos of this incident. The respondent has submitted these videos as a sealed, *ex parte* exhibit. The Court has reviewed these videos.

The first video provides an overhead fisheye view of Mr. Gibson's cell house. The video is choppy and does not show a smooth transition of events. At one point, in the bottom right corner of the video, Mr. Gibson is taken to the ground and put on his stomach.

The second video shows the hallway near the sallyport. The video shows two correctional officers rush into Mr. Gibson's cell house. A third officer enters the cell house about a minute later. Three correctional officers escort Mr. Gibson out of his cell house a minute after that. Mr. Gibson is visibility agitated. He appears to be shouting back at the officers as he exits the frame.

### E. Administrative Appeals

Mr. Gibson appealed his disciplinary conviction to the facility head and the department's final reviewing authority. Dkts. 6-8 to 6-15. These appeals were denied. *Id.* Mr. Gibson then filed this habeas petition under 28 U.S.C. § 2254.

### III. DISCUSSION

Mr. Gibson's habeas petition raises seven grounds for review: (1) that New Castle Correctional Facility and its warden had jurisdiction over this proceeding because that is where Mr. Gibson was confined at the time of the hearing (instead, he alleges that his proceeding was overseen by Miami Correctional Facility and its warden, which is where the misconduct occurred); (2) his disciplinary hearing was held more than 70 days after he was charged, in violation of the department's statute of limitations policy; (3) his charges were retaliatory and meant to discredit his tort claim; (4) he was denied the right to adequate notice; (5) he was denied the right to present exculpatory evidence; (6) the evidence is insufficient to support his disciplinary conviction; and (7) he was denied the right to an impartial decisionmaker.

#### A. Policy Claims

Mr. Gibson's first two grounds for relief concern policies of the Indiana Department of Correction ("IDOC"). A violation of IDOC policy during a disciplinary proceeding is not a basis for habeas relief unless it overlaps with one of the due process rights outlined in *Wolff* and *Hill*. *See, Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (rejecting challenges to a prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process").

There is no due process right to have a disciplinary hearing at a specific facility or under the supervision of a specific warden, nor is there a due process right to a speedy disciplinary hearing held within 70 days of the incident or conduct report. Accordingly, Mr. Gibson's requests for relief on these grounds are **DENIED**.

6

### B. Retaliation

Mr. Gibson argues that Koons fabricated these charges in retaliation for his tort claim or as a way to discredit his tort claim. But in the prison disciplinary context, "fraudulent conduct on the part of prison officials" is not a cognizable claim. *Lagerstrom v. Kingston*, 463 F.3d 621, 625 (7th Cir. 2019). Instead, prisoners receive "protection from such arbitrary action . . . in the procedures mandated by due process." *Id.* Similarly, "retaliatory motive in the filing of a disciplinary charge is not a ground for relief if the subsequent disciplinary proceedings are held in accordance with due process." *Lee v. Berge*, 14 F. App'x 690, 693 (7th Cir. 2001).

The Court will consider Mr. Gibson's due process claims in the proceeding sections of this Order. Mr. Gibson's request for relief on the basis of fabrication and retaliation is **DENIED**.

### C. Notice

Mr. Gibson argues that he was not given adequate notice of his charge before the disciplinary hearing. Due process entitles inmates to advance "written notice of the charges . . . in order to inform [them] of the charges and to enable [them] to marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564. The prisoner must receive at least 24 hours advance written notice of the charge. *Id.* "The notice should inform the inmate of the rule allegedly violated and summarize the facts underlying the charge." *Northern v. Hanks*, 326 F.3d 909, 910 (7th Cir. 2003) (cleaned up).

Mr. Gibson was given advance written notice of his charge on November 25, 2019. His disciplinary hearing was held on February 5, 2020—a full 72 days later. He was able to request evidence and prepare a four-page written statement. He has not explained what he would have done differently if he had received additional time to prepare. Thus, even if this notice was inadequate, he has not demonstrated prejudice. *See Piggie v. Cotton*, 342 U.S. 660 666 (7th Cir.

7

2003) (harmless error doctrine applies to prison disciplinary cases). Accordingly, Mr. Gibson's request for relief on this ground is **DENIED**.

### D. Exculpatory Evidence

Mr. Gibson argues that he was denied the right to exculpatory evidence when prison officials failed to present the surveillance video at his disciplinary hearing.

Prisoners have a limited right to present witnesses and evidence in their defense, consistent with correctional goals and safety. *Wolff*, 418 U.S. at 566. A hearing officer has considerable discretion with respect to requests for evidence and may deny requests that threaten institutional safety or requests that are irrelevant, repetitive, or unnecessary. *Piggie*, 342 F.3d at 666. Due process only requires access to witnesses and evidence that are exculpatory. *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992). "Exculpatory" in this context means evidence that "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 2011). Prison officials are not required to produce evidence they do not have. *Manley v. Butts*, 699 F. App'x 574, 576 (7th Cir. 2017).

Mr. Gibson requested the surveillance video when he received the screening report, prison officials possessed this evidence, but prison officials failed to provide him with this evidence. *See* dkt. 6-5; dkt. 11. The issue is whether this evidence is exculpatory. It is not. Mr. Gibson was found guilty of possessing a cell phone. The surveillance video does not undermine the other evidence in the record, such as the report of conduct, that supports his guilt. Nor does the video show that Mr. Gibson followed all commands during the search, as he claims in his petition. To the contrary, the surveillance video shows that Mr. Gibson had to be restrained on the ground of his range and was visibly agitated—looking back and shouting at correctional officers as they removed him from

the cell house. *Supra* Part II-D. Because the surveillance video is not exculpatory, Mr. Gibson's request for relief on this ground is **DENIED**.

### E. Sufficiency of the Evidence

Mr. Gibson argues that the evidence is insufficient to support his disciplinary conviction. According to Mr. Gibson, there is "no evidence to support the allegations in the charge except for the statement of the reporting officer, who violated IDOC policy 02-03-101." Dkt. 1, p. 6.

Challenges to the sufficiency of the evidence are governed by the "some evidence" standard. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274; *see Eichwedel v. Chandler*, 696 F.3d 600, 675 (7th Cir. 2012) ("The some evidence standard is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (cleaned up). The "some evidence standard" is much more lenient than the beyond a reasonable doubt standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002).

The report of conduct states that Mr. Gibson grabbed items from his cell when Koons went to search his property. He hid the items from Koons' view, refused her commands to submit to a patdown, darted into a nearby cell, and tried to flush the items down the toilet. Koons searched the toilet and found a cell phone attached to a red wire. This is some evidence that Mr. Gibson possessed a cell phone in violation of prison code A 121.

Mr. Gibson's argument that the evidence is insufficient because there is no evidence corroborating Koons' report is a request to reweigh the evidence, which this Court may not do. *See Calligan v. Wilson*, 362 F. App'x 543, 545 (7th Cir. 2009) (citing *Hill*, 472 U.S. at 455; *Scruggs*, 485 F.3d at 941). Accordingly, Mr. Gibson's request for relief on this ground is **DENIED**.

### F. Impartial Decisionmaker

Mr. Gibson argues that he was denied the right to an impartial decisionmaker. A prisoner in a disciplinary action has the right to be heard before an impartial decisionmaker. *Hill*, 472 U.S. at 454. Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie*, 342 F.3d at 666 (7th Cir. 2003); *Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Indeed, "the constitutional standard for impermissible bias is high," and hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding" or because they are employed by the IDOC. *Piggie*, 342 F.3d at 666. Instead, hearing officers are impermissibly biased when, for example, they are "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667.

Mr. Gibson states, "both Ofc. Engelhardt and Sgt. Nice stated that the deputy warden Ms. Hawk instructed them to 'handle' my hearing." Dkt. 1, p. 7. This does not overcome the strong presumption that Officer Engelhardt was impartial. Telling an officer to "handle" a disciplinary hearing does not make the hearing sham. A common definition of handle is "to have overall responsibility for supervising or directing, *e.g.*, a lawyer *handles* all my affairs."[1] That is the very role a disciplinary hearing officer serves in presiding over a disciplinary hearing. Mr. Gibson is presuming a nefarious subtext for Deputy Warden Hawk's use of this word—a subtext that is not supported by other evidence in the record. Given the strong presumption of impartiality in disciplinary habeas proceedings, the Court finds that Mr. Gibson has not met his burden, and his request for relief on this ground is **DENIED**.

---

[1] *Handle*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/handle (last visited April 11, 2022).

10

## IV. Conclusion

Mr. Gibson's habeas petition is **Denied**. Final judgment in accordance with this order shall now issue.

**IT IS SO ORDERED**.

Date: 4/12/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

LIONEL GIBSON
104608
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

David Corey
INDIANA ATTORNEY GENERAL
david.corey@atg.in.gov